ACCEPTED
05-14-01451-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
4/10/2015 6:10:08 PM
LISA MATZ
CLERK

**No. 05-14-01451-CV**

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
4/10/2015 6:10:08 PM
LISA MATZ
Clerk

**In the
Court of Appeals
for the Fifth District
Dallas, Texas**

**KHANH DAO,**

**Appellant**

**v.**

**ELISSA GARCIA, ON BEHALF OF THE ESTATE OF ROJELIO
SALINAS, JR., AND ROJELIO SALINAS, SR.**

**Appellee**

**APPELLEES ELISSA GARCIA, ON BEHALF OF THE ESTATE OF
ROJELIO SALINAS, JR., AND ROJELIO SALINAS, SR.'S BRIEF**

Lorien Whyte
State Bar No. 24042440
lwhyte@brinandbrin.com
Brin & Brin, P.C.
6223 IH 10 West
San Antonio, Texas 78201
Tel: (210) 341-9711
Fax: (210) 341-1854

Dan McDonald
State Bar No. 13539300
dan@mcdonaldlawfirm.com
Preston J. Dugas III
State Bar No.  24050189
preston@mcdonaldlawfirm.com
McDonald Law Firm, P.C.
One Museum Place
3100 W. 7th Street, Suite 230
Fort Worth, Texas 76107
Tel:  (817) 717-5081
Fax: (817) 717-5082

*Attorneys for Appellees Elissa Garcia, on Behalf of the Estate of Rojelio Salinas,
Jr., and Rojelio Salinas, Sr.*

**ORAL ARGUMENT NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant/Defendant**:  Khanh Dao

**Appellees/Plaintiffs**:  Elissa Garcia, on Behalf of The Estate Of Rojelio Salinas, Jr., and Rojelio Salinas, Sr.

**Trial and Appellate Counsel:**
Chris Colby
State Bar No. 24031962
Stacy Thompson
State Bar No.  24046971
sthompson@mperrylaw.com
Meloney Perry
State Bar No.  00790424
mperry@mperrylaw.com
Tiffany Au
State Bar No.  24075842
tau@mperrylaw.com
Perry Law P.C.
10440 North Central Expressway
Suite 1120
Dallas, Texas 75231
Tel:  (214) 265-6201
Fax:   (214) 265-6226

**Trial and Appellate Counsel:**
Lorien Whyte
State Bar No. 24042440
lwhyte@brinandbrin.com
Brin & Brin, P.C.
6223 IH 10 West
San Antonio, Texas 78201
Tel: (210) 341-9711
Fax:  (210) 341-1854

Dan McDonald
State Bar No. 13539300
dan@mcdonaldlawfirm.com
Preston J. Dugas III
State Bar No.  24050189
preston@mcdonaldlawfirm.com
Connie Squiers
State Bar No. 18978515
csquiers@mcdonaldlawfirm.com
McDonald Law Firm, P.C.
One Museum Place
3100 W. 7th Street, Suite 230
Fort Worth, Texas 76107
Tel:  (817) 717-5081
Fax: (817) 717-5082

**Defendant**:  Komali Restaurant, L.L.C.

**Trial Attorneys:**
Jerry L. Ewing, Jr.
State Bar No. 06755470
jerry.ewing@wbclawfirm.com
Nathan R. Cash
State Bar No. 24072026
Walters, Balido & Crain, LLP
Meadow Park Tower, 15th Floor
10440 N. Central Expressway
Dallas, Texas 75231
Tel:  (214) 749-4850
Fax:  (214) 760-1670


**Defendant**:  Tim Parks

**Trial Attorneys:**
Richard E. Harrison
State Bar No. 24087837
rharrison@hlaw.us
Harrison & Hull, L.L.P.
112 W. Virginia St.
McKinney, Texas 75069
Tel:  (214) 585-0094
Fax:  (214) 585-0942

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................................ii

TABLE OF AUTHORITIES ..........................................................................................vi

STATEMENT CONCERNING ORAL ARGUMENT ....................................................ix

FACTS ......................................................................................................................... 1

    A. Parks was drinking all day and during the time that Dao was with him at his house 1

    B. Dao did not object to the jury charge, and her proposed submission included her name in the apportionment of liability question ........................................................ 2

SUMMARY OF THE ARGUMENT ............................................................................. 5

ARGUMENT................................................................................................................ 7

    I.    The evidence was legally sufficient to support the jury's finding that Dao negligently entrusted her vehicle to Parks ............................................................. 7

    A. Standard of Review ........................................................................................ 7

    B. The evidence adduced at trial was sufficient to support the jury's finding that Dao negligently entrusted her vehicle to Parks ........................................................ 9

        1.    There was more than a scintilla of evidence that Dao entrusted her vehicle to Parks .......................................................................................................... 10

        2.    There was more than a scintilla of evidence that Dao knew or should have known that Parks was unlicensed, incompetent, or reckless ........................... 17

    II.    The trial court did not abuse its discretion in submitting Dao in the apportionment of liability question, and the alleged error did not cause the rendition of an improper judgment ................................................................................................ 20

    A. Dao waived her complaint about her name being submitted in the apportionment of liability question .................................................................................................. 20

    B. Dao invited any alleged error by submitting her own proposed apportionment of liability question with her name included in it ................................................. 22

C. The trial court did not abuse its discretion by submitting Dao in the apportionment of liability question ................................................................. 26

1. Standard of Review ................................................................................. 26

2. Dao in no way established the trial court abused its discretion ......................... 27

D. Dao did not even attempt to establish any alleged error probably caused the rendition of an improper judgment ....................................................... 31

III. The trial court properly held Dao jointly and severally liable ................................ 32

PRAYER .......................................................................................................... 37

CERTIFICATE OF COMPLIANCE ........................................................................... 39

CERTIFICATE OF SERVICE ................................................................................. 39

# TABLE OF AUTHORITIES

**Cases**

*Atl. Indus., Inc. v. Blair,*
No. 08-12-00093-CV, 2014 WL 4250540 (Tex. App.—El Paso Aug. 28, 2014, pet. filed)..................................................................................................................... 34

*Bedford v. Moore,*
166 S.W.3d 454 (Tex.App.—Fort Worth 2005, no pet.) .................................. 29, 33, 34

*Bowie v. Broussard,*
No. 01-04-00941-CV, 2006 WL 727718 (Tex. App.—Houston [1st Dist.] March 23, 2006, no pet.) (mem. op.) ............................................................................ 14

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005) .........................................................................7, 8, 16, 20

*Croucher v. Croucher,*
660 S.W.2d 55 (Tex. 1983) ...................................................................................7, 16

*Demler v. Demler,*
836 S.W.2d 696 (Tex. App.—Dallas 1992, no writ).................................................. 21

*Dow Chem. Co. v. Francis,*
46 S.W.3d 237 (Tex. 2001) ..........................................................................8, 11, 16

*Drooker v. Saeilo Motors,*
756 S.W.2d 394 (Tex. App.—Houston [1st Dist.] 1988, writ denied).................... 12, 14

*Edwards v. Mid–Continent Office Distribs., L.P.,*
252 S.W.3d 833 (Tex. App.—Dallas 2008, pet. denied) ................................................7

*European Crossroads' Shopping Ctr., Ltd. v. Criswell,*
910 S.W.2d 45 (Tex. App.—Dallas 1995, writ denied)................................................ 26

*F.F.P. Operating Partners, L.P v. Duenez,*
237 S.W.3d 680 (Tex. 2007) ..............................................................................33, 34

*Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat. Ass'n,*
No. CIV.A. H-04-2833, 2006 WL 870683 (S.D. Tex. Mar. 31, 2006) ......................... 29

*Ford Motor Co. v. Ridgway,*
135 S.W.3d 598 (Tex. 2004) ..................................................................................... 8

*Golden Eagle Archery, Inc. v. Jackson,*
116 S.W.3d 757 (Tex. 2003) ..........................................................................8, 11, 16

*Goodyear Tire & Rubber Co. v. Mayes,*
236 S.W.3d 754 (Tex. 2007) (per curiam) ............................................................9, 17

*Haler v. Boyington Capital Grp., Inc.,*
411 S.W.3d 631 (Tex. App.—Dallas 2013, pet. denied) ............................................. 25

*Hoffmann v. Dandurand,*
143 S.W.3d 555 (Tex. App.—Dallas 2004, no pet.) ....................................................9

*Holubec v. Brandenberger,*
111 S.W.3d 32 (Tex. 2003) ..................................................................................... 21

*In re Dep't of Family & Protective Servs.,*
  273 S.W.3d 637 (Tex. 2009) ...................................................................25
*Jamar v. Patterson,*
  910 S.W.2d 118 (Tex. App.—Houston [14th Dist.] 1995, writ denied) ................ 10, 12
*Loom Craft Carpet Mills, Inc. v. Gorrell,*
  823 S.W.2d 431 (Tex. App.—Texarkana 1992, no writ) ...............................................34
*MRT, Inc. v. Vounckx,*
  299 S.W.3d 500 (Tex. App.—Dallas 2009, no pet.) .......................................................26
*North American Van Lines, Inc. v. Emmons,*
  50 S.W.3d 103 (Tex. App.—Beaumont 2001, pet. denied) .........................................35
*Reinhart v. Young,*
  906 S.W.2d 471 (Tex. 1995) ...................................................................31, 32
*Religious of Sacred Heart v. City of Houston,*
  836 S.W.2d 606 (Tex. 1992) .....................................................................21
*Romero v. KPH Consol., Inc.,*
  166 S.W.3d 212 (Tex. 2005) .....................................................................31
*Rosell v. Cent. W. Motor Stages, Inc.,*
  89 S.W.3d 643 (Tex. App.—Dallas 2002, pet. denied) .........................................passim
*Royal Indem. Co. v. H.E. Abbott & Sons, Inc.,*
  399 S.W.2d 343 (Tex. 1966) .................................................................passim
*Russell v. Ramirez,*
  949 S.W.2d 480 (Tex. App.—Houston [14th Dist.] 1997, no writ).............................. 19
*Russell v. Russell,*
  865 S.W.2d 929 (Tex. 1993) .......................................................................9
*Sanders v. Total Heat & Air, Inc.,*
  248 S.W.3d 907 (Tex. App.—Dallas 2008, no pet.) .......................................................7
*Soodeen v. Rychel,*
  802 S.W.2d 361 (Tex. App.—Houston [1st Dist.] 1991, writ denied)....................13, 14
*Tex. Dep't of Human Servs. v. E.B.,*
  802 S.W.2d 647 (Tex. 1990) .....................................................................26
*Thota v. Young,*
  366 S.W.3d 678 (Tex. 2012) .....................................................................21
*Tittizer v. Union Gas Corp.,*
  171 S.W.3d 857 (Tex. 2005) .....................................................................25
*Transp. Ins. Co. v. Moriel,*
  879 S.W.2d 10 (Tex. 1994) .......................................................................7
*Vaughn v. Watkins.*
  344 S.W.2d 9022 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.) ....................14, 15
*Walker v. Cotter Props., Inc.,*
  181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.) ...............................................8, 16
*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992) (orig. proceeding) .......................................................26

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 33.003 .......................................................6, 27, 28, 35

TEX. CIV. PRAC. & REM. CODE § 33.003(a) ...................................................................27

TEX. CIV. PRAC. & REM. CODE § 33.003(b)...................................................................32

TEX. CIV. PRAC. & REM. CODE § 33.013........................................................................36

**Other Authorities**

PJC 10.12.........................................................................................................................30

PJC 4.3.............................................................................................................................30

William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 BAYLOR L. REV. 617, 647–48 (2003) .........34

**Rules**

TEX. R. APP. P. 33.1.........................................................................................................21

TEX. R. APP. P. 44.1(a)(1).................................................................................................31

TEX. R. CIV. P. 272 ..........................................................................................................21

TEX. R. CIV. P. 274 ..........................................................................................................21

## STATEMENT CONCERNING ORAL ARGUMENT

Appellees have not requested oral argument because they believe that oral argument is not necessary since the issues before this court can be determined based on the briefing and the record before this Court. However, if this Court determines oral argument will be helpful to its determination, appellees do not wish to waive their right to participate in oral argument.

TO THE HONORABLE FIFTH COURT OF APPEALS:

Appellees, Elissa Garcia, on Behalf of The Estate of Rojelio Salinas, Jr., and Rojelio Salinas, Sr., respectfully file Appellees' Brief, and in support of which submit the following:

**FACTS**

## A. Parks was drinking all day and during the time that Dao was with him at his house.

Dao's Statement of Facts contains many misstatements. First, Dao attempts to paint the picture that Dao had no idea that Parks had been drinking before he got in her vehicle and took the life of Rojelio Salinas. However, the evidence was not only clear that Parks had been drinking alcohol throughout the day leading up to his dinner with Dao and prior to the accident, but there was also evidence that Parks had been drinking while with Dao. 3 RR 218-19, 222. In the police video played at trial, Parks told the officer he had a glass of wine at 8:00 p.m. and at 9:00 p.m. 3 RR 41. This is the same time period he was at his apartment cooking and eating dinner with Dao.

Dao testified she got to Parks' apartment around 8:00 or 8:30 p.m. on the night of the accident, and Parks cooked her dinner. 4 RR 81. Parks left the apartment in Dao's vehicle around 10:00 p.m., and arrived at Komali's around 10:10 p.m. 3 RR 220-21. Parks testified that once at Komali's he was only served about a half of a glass of wine by Leann, which he did not finish. 3 RR 231, 33.

1

Dickey's testimony confirmed Parks only had a half glass of wine while at Komali's. 3 RR 90. According to both Parks' and Dickey's testimony, he was only at Komali's for about 10 minutes. 3 RR 273; 3 RR 89.

Dao testified that she hadn't been asleep for very long when her phone rang and Parks told her he had been in an accident in her vehicle and he needed the insurance information. 4 RR 84. The accident occurred at approximately 11:05 p.m. 7 RR Plaintiffs' Exhibit 10C. The toxicologist testified that Parks had a blood alcohol content of .22, which was almost three times over the legal limit. 3 RR 138-39. The toxicologist also testified that in his opinion, at the point Parks was at Komali's he would have been showing signs of intoxication. 3 RR 146.

### B. Dao did not object to the jury charge, and her proposed submission included her name in the apportionment of liability question.

A primary complaint of Dao's in this appeal is that her name should not have been included in the apportionment of liability question. As a precursor to that argument, in her statement of facts Dao completely misrepresents to the Court that she "submitted her proposed jury instructions which followed this court's reasoning in *Rosell* and did not include Ms. Dao in the negligence or apportionment questions. (CR 126)." *Appellant's Brief* at 4. The record before this Court clearly indicates that this is untrue:

2

## QUESTION NO. 1 (NEGLIGENCE)

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

Answer the question as to Khanh Dao only if you have answered "Yes" as to Tim William Parks.

a. Rojelio Salinas, Jr.         _____

b. Tim William Parks         _____

c. Komali Restaurant         _____

d. Khanh Dao                 _____

CR 121.

## QUESTION NO. 2 (PERCENT OF NEGLIGENCE)

For each person you found caused or contributed to cause the occurrence, find the percentage of responsibility attributable to each:

a. Rojelio Salinas, Jr.         _____%

b. Tim William Parks         _____%

c. Komali Restaurant         _____%

c. Khanh Dao                 _____%

Total                         _____100_____%

Authority:     TEX. P.J.C. 4.3; Tex. Civ. Prac. & Rem. Code §§33.003.

CR 126.

3

The proposed submission of Dao clearly included her name in the negligence and the apportionment of liability questions. Her representation to this Court to the contrary is completely without support. As is her contention that, "The trial court overruled Ms. Dao's objection to including her name in the apportionment question, electing to include the Plaintiffs' proposed version of the apportionment question in the final charge. (CR 186-87)." *Appellant's Brief* at 4. Dao fails to direct this Court to anywhere in the record that would indicate she objected to her name being included in the apportionment question. *Id.* In fact, a review of both the reporter's record and the clerk's record indicates that no such objection was ever made. RR 146-49 (formal jury charge conference); CR 126 (Dao's submission of Question 2).

## SUMMARY OF THE ARGUMENT

The tragedy of Mr. Salinas' death was the result of a series of negligent acts by a number of people—namely the driver, Tim Parks, and Khanh Dao, whose vehicle Parks was driving while he was almost three times over the legal limit. The jury agreed and found Parks 85% liable and Dao 10% liable.

The evidence established Parks and Dao had a close relationship and he had, on almost a weekly basis, driven Dao's vehicle with her permission. Parks had been drinking most of the day leading up to the accident, and then he had continued that downward spiral with wine during the time period he was with Dao. While Dao testified Parks did not drink nor appear intoxicated when she was with him, the jury was free to determine her credibility. The jury found that Dao had negligently entrusted her vehicle to Parks. There is evidence in the record supporting the jury's finding, and, therefore, the jury's verdict must stand.

As for Dao's complaint that she was improperly included in the apportionment of liability question in the jury charge, Dao invited any such complaint by providing the Court with a proposed jury charge that actually listed her own name in the question. Further, she waived the complaint because she never objected to the question being submitted, even though she represents to this Court that she did in fact object to it.

Even assuming Dao did not invite error or waive her complaint, which this Court cannot ignore, Dao failed to establish the trial court abused its discretion in submitting her name in the apportionment of liability question. Section 33.003 of the Texas Civil Practice and Remedies Code mandates the submission and case law supports the trial court including her name in the apportionment of liability question. As such, this Court cannot find the trial court abused its discretion. Likewise, Dao in no way argues to this Court that any alleged error probably caused the rendition of an improper judgment, which is a prerequisite to reversing the judgment.

Finally, Dao's complaint that she cannot be held jointly and severally liable for 95% of the judgment (Parks' 85% liability and Dao's 10% liability) is unavailing. A finding that Dao negligently entrusted her vehicle to Parks made her liable for her and Parks' liability. The case law clearly establishes that. Dao's attempt to only be held 10% liable is even contradicted by her own statements in her brief that she had derivative liability exposure for the negligent entrustment of her vehicle to Parks'. The jury's verdict and the trial court's judgment must stand.

**ARGUMENT**

**I.     The evidence was legally sufficient to support the jury's finding that Dao negligently entrusted her vehicle to Parks.**

**A. Standard of Review.**

When, as here, Dao attacks the legal sufficiency of an adverse finding on an issue for which they did not have the burden of proof, they must demonstrate there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). When conducting a legal sufficiency review, this Court must view the evidence in a light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 807, 822 (Tex. 2005); *Sanders v. Total Heat & Air, Inc.,* 248 S.W.3d 907, 912 (Tex. App.—Dallas 2008, no pet.). This Court must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994); *Edwards v. Mid–Continent Office Distribs., L.P.,* 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied).

Evidence is legally sufficient to support the jury's finding unless: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no

7

more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller,* 168 S.W.3d at 810. Evidence does not exceed a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker v. Cotter Props., Inc.,* 181 S.W.3d 895, 899 (Tex. App.—Dallas 2006, no pet.).

This Court must indulge every reasonable inference in support of that finding. *City of Keller*, 168 S.W.3d at 822. "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *Id.* at 819. "Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it." *Id.* This Court must defer to the jury as the sole judge of the witnesses' credibility. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001); *see Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003). The jury may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the contrary. *Golden Eagle Archery*, 116 S.W.3d at 761.

Further, any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993); *see also Hoffmann v. Dandurand*, 143 S.W.3d 555, 559 (Tex. App.—Dallas 2004, no pet.) (ultimate fact is one that is essential to cause of action and would have direct effect on judgment). An ultimate fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Russell*, 865 S.W.2d at 933.

**B. The evidence adduced at trial was sufficient to support the jury's finding that Dao negligently entrusted her vehicle to Parks.**

To establish liability under a negligent entrustment theory, plaintiffs were required to establish that (1) Dao entrusted her vehicle to Parks; (2) Parks was unlicensed, incompetent, or reckless driver; (3) that Dao knew or should have known at the time of entrustment to be unlicensed, incompetent, or reckless; (4) Parks was negligent on the occasion in question; and (5) Park's negligence proximately caused the accident. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 758 (Tex. 2007) (per curiam).

Dao only challenges the legal sufficiency of the evidence to establish (1) Dao entrusted her vehicle to Parks, and (3) that Dao knew or should have known at the time of entrustment to be unlicensed, incompetent, or reckless.

9

## 1. There was more than a scintilla of evidence that Dao entrusted her vehicle to Parks.

The Texas Supreme Court has been clear that a party can establish the owner entrusted their vehicle from either express or implied permission. *See Royal Indem. Co. v. H.E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex. 1966); *see also Jamar v. Patterson*, 910 S.W.2d 118, 119 (Tex. App.—Houston [14th Dist.] 1995, writ denied). "[I]mplied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Id.* "It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used." *Id.*

Dao relies on her own testimony by contending Parks only drove her car on a "handful of occasions" and for "specific business purposes." *Appellant's Brief* at 14 (citing 4 RR 51-52). However, a review of Dao's testimony in no way establishes that she testified that Parks only used her vehicle a "handful of times." *See* 4 RR 51-52.

Further, the evidence presented to the jury established a very close relationship between Dao and Parks and a pattern of Dao lending her vehicle to Parks. First, Jeffrey Dickey, someone who had no interest in this proceeding, testified that for the longest time Parks did not drive a car, and then toward "the most recent occurrence" he drove Dao's car "maybe once a week." 3 RR 111-112.

10

Dickey himself had even seen Parks drive Dao's vehicle. 3 RR 122. Further, both Parks and Dao acknowledged that Parks had driven Dao's vehicle on a number of occasions in the past. 4 RR 51. Parks testified that although he didn't remember specifically why he had driven Dao's vehicle, he would drive it when "I would need a car." 3 RR 214. Further, he acknowledged that when he needed Dao's vehicle she would let him use it. 3 RR 215. Finally, Parks testified Dao's keys were on the dining room table. 3 RR 230.

The jury is the sole judge of the witnesses' credibility, and the jury could choose to believe one witness over another. *Dow Chem. Co.*, 46 S.W.3d at 242; *see Golden Eagle Archery, Inc.,* 116 S.W.3d at 761. The jury was free to presume that Dao frequently let Parks drive the vehicle for more than just business related purposes, and instead for his personal use.

Further, the evidence presented at trial established Parks and Dao had a very close relationship. Parks testified he met Dao in the 1990's, he generally saw Dao on a daily basis, and he was roommates with her for two years. 3 RR 209, 212-13. Dickey confirmed Dao and Parks' close relationship when testified that Dao and Parks were close friends and had lived together. 3 RR 112. Dickey even went so far as to say that Dao was at Parks' house so frequently that she "had some form of belonging there. It appeared always to be a secondary residence." *Id.*

The evidence establishing Dao and Parks' close relationship and that Dao

11

frequently lent Parks her vehicle was sufficient to support the jury's finding. In *Drooker v. Saeilo Motors*, the Court found that the driver's use of the vehicles on many occasions with knowledge and consent of the owner presented some evidence that the driver was authorized to drive the owner's vehicles in general. 756 S.W.2d 394, 399 (Tex. App.—Houston [1st Dist.] 1988, writ denied). The Court found that if the driver was authorized to drive the vehicles, the fact that the owner did not know that the driver would drive the car on that day would not preclude as a matter of law a finding that the owner entrusted the driver with their vehicles. *Id.*

Likewise, in *Jamar v. Patterson*, the owner challenged the sufficiency of the evidence after the jury found him liable for negligent entrustment. 910 S.W.2d at 119. At trial, the driver testified that the owner had given her permission to drive the dune buggy the night before the accident, and had impliedly given her permission to do so by seeing her drive, saying she was doing fine, and not telling her not to drive. *Id.* at 121. Relying on *Royal Indemnity*, the Court noted that, "Express permission is that which is affirmatively stated, while implied permission may be inferred from conduct between the parties in which there is acquiescence or lack of objection signifying consent." *Id.* (citing *Royal Indem. Co.*, 399 S.W.2d at 345). The Court found, "Thus, depending on the jury's assessment of the credibility of the witnesses, there was conflicting evidence of both express and

12

implied permission, and, therefore, entrustment." *Id.* at 123. The Court concluded, "Although the evidence was disputed, we cannot conclude that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* Such is the case here.

Dao appears to argue that Parks' prior use of the vehicle with the express permission of Dao was insufficient to establish implied permission. In support of which, Dao dedicates a large part of her analysis to *Soodeen v. Rychel.* 802 S.W.2d 361 (Tex. App.—Houston [1st Dist.] 1991, writ denied). But even Dao's own analysis indicates the facts in *Soodeen* were entirely different than those here. *Appellant's Brief* at 14-17. In *Soodeen*, there was no evidence the owner had *ever* lent his vehicle to the driver; therefore, there was no evidence of prior use. *Soodeen*, 802 S.W.2d at 363-64. The only evidence presented was that: (1) the owner socialized with the driver during the year before the accident and visited her apartment on an estimated 20 occasions; (2) he let her sit in his car to wait for him to return and unlocked the car door so that she could do so; (3) he had earlier left an extra ignition key hidden in the car and admitted that the key was found in the car's ignition after the accident; and (4) he did not file theft charges against the driver. *Id.* at 363.

The facts in *Soodeen* are so distinguishable from the case at hand that it lends no support for this Court's analysis of the issue. In fact, the Court in

*Soodeen* acknowledged that "[a] person's consent for another to operate his automobile can be proved by circumstantial evidence." *Id.* at 364. The Court went on to distinguish the case from those like *Drooker*, relied on earlier in Appellee's Brief, because in *Drooker* there was evidence of past use of the vehicle by the driver but that was present in *Soodeen*. *Id.*

Further, Dao's reliance on *Bowie v. Broussard* is unavailing. No. 01-04-00941-CV, 2006 WL 727718, at *2-3 (Tex. App.—Houston [1st Dist.] March 23, 2006, no pet.) (mem. op.). Dao contends that in *Bowie* there was more evidence than was presented in the present case, yet the Court still held the evidence was not sufficient. *Appellant's Brief* at 17. Specifically, Dao contends that in *Bowie* the driver had "express permission to drive the car on *other occasions*." *Id.* (emphasis added). This completely misrepresents the facts of *Bowie*. In *Bowie*, the driver had only driven the vehicle on <u>one occasion</u>, and that was when the owner of the vehicle was too sick to drive herself and the driver had to take the owner to the doctor. *Bowie*, 2006 WL 727718, at * 2-3. This is a far cry from the current case where there was evidence that Parks drove Dao's car on a regular basis with her permission. 3 RR 111-112, 122.

Next, Dao relies on *Vaughn v. Watkins*. 344 S.W.2d 902, 902 (Tex. Civ. App.—Eastland 1961, writ ref'd n.r.e.). The Court in *Vaughn* considered whether to reverse the jury finding that the owner had *not* negligently entrusted the vehicle,

14

which a different review than the present case. *Vaughn*, 344 S.W.2d at 902-03. Further, the Court specifically found that the "controlling question is whether he was entrusted with the vehicle at the time of the collision." *Id.* at 902. However, *Vaughn* was issued five years prior to *Royal Indemnity*, which modified the standard and held that implied permission can be inferred from prior usage of the vehicle or the relationship between the parties. *See Royal*, 399 S.W.2d at 345.

Finally, Dao relies on *Royal Indemnity. Royal*, 399 S.W.2d at 344. Again, in *Royal Indemnity* the Supreme Court recognized that "implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Id.* at 345. However, the Court concluded that under the facts of the case, the evidence established "neither a relationship nor a prior course of conduct from which implied permission might fairly be inferred." *Id.* at 347. Specifically, the Court relied on the following in making its finding:

> Landers was employed as a ranch hand. He had never driven one of the vehicles off the ranch except when specifically instructed to do so, and had never used any of them for a personal errand. His employer had always driven him to town whenever he wanted to go, and had no reason to believe that he intended or might need to use one of the vehicles on the evening of the accident. In view of these undisputed facts, the limited privileges Landers was allowed in the Herring house, his occasional pleasure trips with Herring, the availability of the vehicles, his use of the same on the ranch, Herring's inquiry about his driver's license, and the absence of any

15

> prior instruction not to take the vehicles off the ranch, afford no basis for concluding that Landers had implied permission to use the truck for a trip to San Angelo on a personal mission. We hold that there is no evidence to support a finding that the vehicle was being operated with the implied permission of the named insured.

*Id.*

*Royal Indemnity* is wholly distinguishable from the case at hand where the relationship between Dao and Parks was undisputed and there was evidence that Dao lent her vehicle to Parks on a regular basis and it was not limited to just business purposes as Dao argues. 3 RR 213-15 (Parks' Testimony); 3 RR 111-12, 122 (Dickey's Testimony); 4 RR 51 (Dao's Testimony).

Dao has in no way discharged her burden to demonstrate there was *no evidence* that Dao impliedly entrusted her vehicle to Parks. *See Croucher*, 660 S.W.2d at 58. Anything more than a scintilla of evidence is legally sufficient to support a challenged finding, and at a minimum there was more than a scintilla of evidence. *See Walker*, 181 S.W.3d at 899. This Court must assume the jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it, and must defer to the jury as the sole judge of the witnesses' credibility. *City of Keller* , 168 S.W.3d at 819. *Dow Chem. Co.,* 46 S.W.3d at 242; *see Golden Eagle Archery, Inc.,* 116 S.W.3d at 761. Indulging every reasonable inference in support of that finding, the evidence is legally sufficient to support the jury's finding. *See City of Keller*, 168 S.W.3d at 807, 822.

**2. There was more than a scintilla of evidence that Dao knew or should have known that Parks was unlicensed, incompetent, or reckless.**

Dao also contends the evidence presented at trial conclusively established Dao did not know and had no reason to know that Parks was an *unlicensed* or *intoxicated driver* at the time he took her vehicle. *Appellant's Brief* at 20. First, it is important to note that the standard is not just whether she knew Parks was unlicensed or intoxicated, but whether she also knew *or should have known* that unlicensed, intoxicated, incompetent or reckless. *See Goodyear,* 236 S.W.3d at 758 (holding that one of the elements of negligent entrustment is that the owner knew or should have known at the time of entrustment to be unlicensed, incompetent, or reckless).

Dao relies on the testimony of witnesses that Parks did not appear intoxicated. *Appellant's Brief* at 21. Those witnesses include the employee of Komali Restaurant, Leann Barry. *Id.* Komali was also a defendant in the suit for their role in serving Parks. CR 8 (Plaintiffs' Original Petition). As such, the witness had an interest in testifying that Parks did not appear to be intoxicated, and the jury could judge her credibility.

Parks testified that he had consumed two to three glasses of wine while he was at Peckers for an hour or an hour and half earlier in the day. 3 RR 218-19. Parks further testified that once he arrived home from Peckers at about 2:00 or 2:30 p.m., he consumed "a few more glasses of wine." 3 RR 222. Dao testified

17

she got to Parks' apartment around 8:00 or 8:30 p.m. on the night of the accident, and Parks cooked her dinner. 4 RR 81. In the police video played at trial, Parks told the officer he had a glass of wine at 8:00 p.m. and at 9:00 p.m., which is the same time period he was at his apartment cooking and eating dinner with Dao. *Id.*; 3 RR 41.

Parks left the apartment in Dao's vehicle around 10:00 p.m., and arrived at Komali's around 10:10 p.m. 3 RR 220-21. Once at Komali's, Parks testified he was only served about a half of a glass of wine by Leann, which he did not finish. 3 RR 231, 33. Dickey's testimony confirmed Parks only had a half glass of wine while at Komali's. 3 RR 90. According to both Parks' and Dickey's testimony, he was only at Komali's for about 10 minutes. 3 RR 273; 3 RR 89.

Dao testified that she hadn't been asleep for very long when her phone rang and Parks told her he had been in an accident in her vehicle and he needed the insurance information. 4 RR 84. The accident occurred at approximately 11:05 p.m. 7 RR Plaintiffs' Exhibit 10C. Further, the toxicologist testified that Parks had a blood alcohol content of .22, which was almost three times over the legal limit. 3 RR 138-39. The toxicologist also testified that in his opinion at the point Parks was at Komali's he would have been showing signs of intoxication. 3 RR 146. He was only at the bar for 10 minutes, so the jury could have determined that Parks would have been also showing signs of intoxication at his apartment with Dao also.

18

The jury could have believed based on all of the evidence presented that Parks was indeed intoxicated when he left in Dao's vehicle and Dao knew he was intoxicated.

Additionally, Dao testified that she was Parks' employer. 3 CR 209-10. It is undisputed that Parks did not have a driver's license. 3 RR 213. The jury could have believed that as Parks' employer she knew he did not have a driver's license.

Further, in a written statement introduced as Plaintiffs' Exhibit 20 at trial, Dao admitted she knew Parks was "not good at driving a big car." 7 RR Plaintiffs' Exhibit 20. This is sufficient to provide some evidence that Dao knew Parks was incompetent or reckless. In *Russell v. Ramirez*, the Court found the evidence sufficient to uphold the jury finding of negligent entrustment when the father and mother (owners of the vehicle) allowed their son to drive their vehicle. 949 S.W.2d 480, 490 (Tex. App.—Houston [14th Dist.] 1997, no writ). The evidence at trial showed that although the father did not know of his son's bad driving record, four years prior to the accident at issue he had commented to his son about his bad driving habits. *Id.* The Court found this sufficient to uphold the jury's finding of negligent entrustment. *Id.* The Court also held that the jury could have found that a reasonable owner should have inquired into his son's driving record and that failure to do so constituted negligence. *Id.*

Again, after viewing this evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary

19

evidence unless reasonable jurors could not, this Court must hold that Dao failed to

demonstrate that there is no evidence to support the jury's finding that *Dao knew*

*or had reason to know* that Parks was unlicensed, intoxicated, incompetent, and/or

reckless. *See City of Keller,* 168 S.W.3d at 810. This Court should conclude that

the evidence at trial is legally sufficient to enable reasonable and fair-minded

people to reach the verdict under review here. *Id.*

II. **The trial court did not abuse its discretion in submitting Dao in the apportionment of liability question, and Dao failed to establish the alleged error caused the rendition of an improper judgment.**

A. **Dao waived her complaint about her name being submitted in the apportionment of liability question.**

Dao contends, "Prior to trial, Ms. Dao submitted her proposed jury

instructions which followed this Court's reasoning in *Rosell and did not include*

*Ms. Dao in the apportionment question.*" *Appellant's Brief* at 23. Dao goes on to

argue that, "The trial court overruled Ms. Dao's objection and allowed

Plaintiffs[sic] requested submission of the apportionment question in the jury

charge." *Id.* This is a complete misstatement of the facts. In fact, there is nothing

in the record indicating Dao <u>ever</u> objected to the submission of her name in the

apportionment question. RR 146-49 (formal jury charge conference); CR 126

(Dao's submission of Question 2). Even Dao fails to give this Court any reference

to the record supporting her contention that she objected to the apportionment of

liability question in anyway. *Dao's Brief* at 23. Further, as more fully addressed below, Dao's own submission of Question 2 included her name in the apportionment question. CR 126.

The Texas procedural rules "govern the preservation requirements for raising a jury charge complaint on appeal and require the complaining party to make an objection before the trial court." *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012); *see* TEX. R. CIV. P. 272; TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1. Dao had to object to an erroneous question being included in the Court's charge. *See Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003); *Holu See Religious of Sacred Heart v. City of Houston*, 836 S.W.2d 606, 613–14 (Tex. 1992) (objection is proper method of preserving complaint about defective issue submission regardless of who has burden of proof). In the absence of an indication in the record that the issue was presented to the trial court and refused, no error can be shown. *Demler v. Demler,* 836 S.W.2d 696, 698-99 (Tex. App.—Dallas 1992, no writ).

In order to complain about the submission of her name in the apportionment of liability question, Dao had to object to her name being included in that question. The record clearly reflects that Dao never did that. RR 146-49 (formal jury charge conference); CR 126 (Dao's submission of Question 2). Further, she could have submitted her own Question 2 with only Salinas, Parks, and the Komali Restaurant

(omitting her name altogether). But she did not, even though she represents to this Court that she did. CR 126. As such, a complaint was never made to the trial court that it was improperly submitting Dao in the apportionment of liability question. As such, Dao has waived any complaint on appeal regarding this submission.

**B. Dao invited any alleged error by submitting her own proposed apportionment of liability question with her name included in it.**

In fact, even though Dao argues to this Court that she should not have been listed in the apportionment of liability question, her own proposed submission of the jury charge actually included her name. CR 121, 126. This is completely contrary to Dao's representation she makes to this Court that she "submitted her proposed jury instructions which followed this court's reasoning in *Rosell* and did not include Ms. Dao in the negligence or apportionment questions. (CR 126)." *Appellant's Brief* at 4. Dao's proposed Questions 1 and 2 were as follows:

**QUESTION NO. 1 (NEGLIGENCE)**

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

Answer the question as to Khanh Dao only if you have answered "Yes" as to Tim William Parks.

a. Rojelio Salinas, Jr.          _____

b. Tim William Parks          _____

c. Komali Restaurant          _____

d. Khanh Dao          _____


CR 121.


**QUESTION NO. 2 (PERCENT OF NEGLIGENCE)**

For each person you found caused or contributed to cause the occurrence, find the percentage of responsibility attributable to each:

a. Rojelio Salinas, Jr.          _____%

b. Tim William Parks          _____%

c. Komali Restaurant          _____%

c. Khanh Dao          _____%

Total          _____100_____%

Authority:     TEX. P.J.C. 4.3; Tex. Civ. Prac. & Rem. Code §§33.003.


CR 126.

23

Questions 1 and 2 as submitted to the jury were as follows:

## QUESTION NO. 1

Do you find from a preponderance of the evidence that the negligence, if any, of the persons named below proximately caused the occurrence in question?

Answer "Yes" or "No" for each of the following:

a.  Komali Restaurant          Answer: Yes

b.  Khanh Dao                  Answer: Yes

c.  Tim William Parks          Answer:   Yes*

# CR 186. [1]

If you have answered "Yes" to Question No. 1 for more than one of those named, then answer the following question. Otherwise, do not answer the following question.

## QUESTION NO. 2

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?

The percentages you find must total 100%. The negligence attributable to those named below is not necessarily measured by the number of acts or omissions found.

a.  Komali Restaurant          Answer:      5

b.  Khanh Dao                  Answer:      10

c.  Tim William Parks          Answer:      85

---

[1] The only difference between Dao's proposed jury charge and the actual jury charge was Dao's instruction that "Answer the question as to Khanh Dao only if you have answered "Yes" as to Tim William Parks." CR 121, 186. However, as the charge indicates, Parks stipulated that he was negligent; therefore, the proposed instruction was unnecessary and Dao does not complain about the lack of the instruction in this appeal. CR 186.

24

CR 187.

The jury question was specifically requested by Dao in her charge. As this Court has made clear, "A party cannot ask something of the trial court and then complain that the court erred by granting [her] request." *Haler v. Boyington Capital Grp., Inc.*, 411 S.W.3d 631, 637 (Tex. App.—Dallas 2013, pet. denied) (citing *Tittizer v. Union Gas Corp.,* 171 S.W.3d 857, 861 (Tex. 2005)). Even if this Court were to assume, which it should not, that the charge was erroneous, "the doctrine of invited error provides that a party may not complain of an error which the party invited." *Id.* (citing *In re Dep't of Family & Protective Servs.,* 273 S.W.3d 637, 646 (Tex. 2009)).

Not only did Dao not object to the submission (contrary to what she represents to this Court), but she actually submitted a question that included her name in the question. Dao cannot submit her own name in the apportionment of liability question and then later complain that the trial court erred in doing so. Because Dao requested the submission that she now complains about, this Court should not consider the merits of the alleged error. *See Haler*, 411 S.W.3d at 637 (holding that the Court will not consider the merits of an alleged error that resulted from language in the charge requested by the party complaining of it on appeal).

**C. The trial court did not abuse its discretion by submitting Dao in the apportionment of liability question.**

Dao presents the issue of whether it was proper to apportion responsibility to Dao under direct as well as derivative liability theories. *Dao's Brief* at 1. Even if this Court were to assume Dao did not waive her complaint nor did she invite error, which this Court should not, Dao has not provided this Court with anything that establishes the trial court abused its discretion in submitting Dao in the apportionment question.

### 1. Standard of Review.

A trial court has wide discretion in submitting instructions and jury questions. *European Crossroads' Shopping Ctr., Ltd. v. Criswell,* 910 S.W.2d 45, 54 (Tex. App.—Dallas 1995, writ denied). Dao's allegation of jury charge error is reviewed for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990); *MRT, Inc. v. Vounckx,* 299 S.W.3d 500, 505 (Tex. App.—Dallas 2009, no pet.). To satisfy the clear abuse of discretion standard, Dao must show "that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). With regard to the resolution of matters committed to the trial court's discretion, "a reviewing court may not substitute its judgment for that of the trial court." Only "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* "Even if the reviewing court would have reached the

26

issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id*.

## 2. Dao in no way established the trial court abused its discretion.

Dao has a high burden to overcome regarding her complaint about the jury charge. Dao outright ignores this burden in her Brief. Instead, Dao analyzes this Court's holding in *Rosell v. Central W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied). And, as previously discussed, Dao misrepresents to this Court that her proposed jury instruction followed this Court's reasoning in *Rosell* and "did not include Ms. Dao in the apportionment question." *Appellant's Brief* at 23.

Dao claims, "Since any negligence assigned to Mr. Parks by the jury would be passed on to Ms. Dao, her inclusion in the apportionment question resulted in the jury assigning a percentage of individual negligence to a party with only derivative liability exposure." *Id.* Dao's analysis on this issue ends there. At no point does Dao even attempt to establish the trial court abused its discretion.

Section 33.003 of the Civil Practice and Remedies Code mandates that the following be submitted in the jury charge when determining the percentage of responsibility: (1) each claimant; (2) each defendant; (3) each settling person; and (4) each responsible third party. TEX. CIV. PRAC. & REM. CODE § 33.003(a).

27

Therefore, on its face section 33.003 required the trial court to include Dao in the jury charge when determining the percentage of responsibility of each defendant.

*Rosell* in no way forbids the trial court from including Dao in the apportionment of liability question. *Rosell*, 89 S.W.3d at 657. In *Rosell*, this Court considered whether the trial court abused its discretion *in failing to allow the jury to consider the negligence of the owner* of the bus in the apportionment question. *Id.* at 656. The plaintiffs argued that the failure to include the owner in the apportionment question violated section 33.003 of the Texas Civil Practice and Remedies Code. *Id.* This Court held there was *no abuse of discretion* in not including the owner in the apportionment question because the driver's negligence would be passed on to the owner. *Id.* at 657.

*Rosell* was the opposite situation that we have here. Here, Dao had to establish "that the trial court could reasonably have reached only one decision"— that the trial court could have only submitted a charge without Dao in the apportionment of liability question. *See Walker*, 827 S.W.2d at 840. Because the standard of review requires that Dao establish the trial court abused its discretion in submitting her in the apportionment question, *Rosell* cannot be used to hold that such an abuse occurred. *Rosell* simply stands for the proposition that it is permissible to submit only the driver and not the entrustor in the negligence question, and in no way mandates it.

28

And, in fact, there appears to be a split of authority as to whether an owner should be submitted in the apportionment question in a negligent entrustment case. *See Rosell*, 89 S.W.3d at 657; *compare with Bedford v. Moore*, 166 S.W.3d 454, 462-63; *see also Fid. & Guar. Ins. Underwriters Inc. v. Wells Fargo Bank, Nat. Ass'n*, No. CIV. A. H-04-2833, 2006 WL 870683, at *5 (S.D. Tex. Mar. 31, 2006) (noting the difficulty courts have faced in reconciling the Proportionate Responsibility Statute and vicarious and/or derivative liability claims such as negligent entrustment).

In *Bedford*, the Court of Appeals found it was error (although later determined it to be harmless) for the trial court to not submit the entrustor in the jury charge questions. *Id.* The Court found that like the Dram Shop Act, "if the …entrusting employer is negligent, his liability for the acts of the driver is established, but by submitting both the driver's and the hiring or entrusting employer's negligence to the jury, allowance is made for recovery by the hiring or entrusting employer from the driver, based on the percentages of responsibility assessed by the jury. *Id.* at 462. The Court concluded, "the proper submission in a simple negligent entrustment or hiring claim, based upon sufficient evidence to warrant the submission, is to include the alleged negligent hiring or entrusting employer in an initial liability question and in the comparative negligence questions." *Id.*

29

Further, the Pattern Jury Charge 4.3 (Proportionate Responsibility) suggests that each person found to have caused or contributed to cause the occurrence or injury be listed in the apportionment of responsibility question and makes no exception for an owner/defendant sued for negligent entrustment. PJC 4.3 (2014). In fact, the comments to PJC 4.3 specifically reference the "entrustor" and directs us to PJC 10.12. *See* PJC 4.3 and comments. PJC 10.12 (Negligent Entrustment) specifically includes both the driver and the owner of the vehicle in the negligence question. PJC 10.12. Further, the comments to PJC 10.12 note that "[w]hether the entrustor should be submitted in the comparative causation question is uncertain." *Id.*

Even if this Court would have reached the issue differently, "it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Walker*, 827 S.W.2d at 840. There was nothing arbitrary or unreasonable about the trial court's submission of the jury charge. Both the plaintiffs and Dao submitted drafts of question 1 and 2 that included Dao in both questions. Dao's failure to object or request a question that would put the trial court on notice of the complaint she now appears to make on appeal cannot lead to the finding the trial court abused its discretion. The jury charge was submitted to the jury in compliance with both proposed charges and in compliance with the PJC. There was absolutely nothing that mandated the trial court to remove Dao

30

from the apportionment of liability question. And, in fact there was case law to support the trial court's submission. As such, Dao cannot and did not even attempt to meet her high burden that the trial court abused its discretion.

**D.    Dao did not even attempt to establish any alleged error probably caused the rendition of an improper judgment.**

Even assuming there was error in the charge that was not waived nor invited, which plaintiffs strenuously assert there was not, a trial court only commits reversible error if, in light of the whole record, the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 225 (Tex. 2005); *Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995). Nowhere in Dao's Brief does she provide record citations or arguments addressing harm and that the complained of submission "probably caused the rendition of an improper judgment." Instead, she simply states "[s]ince any negligence assigned to Mr. Parks by the jury would be passed on to Ms. Dao, her inclusion in the apportionment question resulted in the jury assigning a percentage of individual negligence to a party with only derivative liability exposure." *Appellant's Brief* at 23. This is not sufficient to establish for this Court that the jury charge error complained of probably resulted in the rendition of an improper judgment.

Further, even in Dao's prayer she only asks for a reversal of "the jury's findings" and that judgment be rendered in her favor. *Id.* at 27. Alternatively, she

31

asks that the Court render judgment and only hold Dao responsible for 10% of the damages. *Id.* She asks for no relief with regard to her apparent complaint that she should not have been listed in the apportionment of liability question. *Id.*

All the while, any alleged error is harmless because the jury found Dao negligent for negligent entrustment. CR 184 (negligent entrustment instruction as to Dao), 186 (jury question regarding Dao's negligence). As such, even if Dao had not been assigned a percentage of responsibility, she would have still been liable for Park's negligence (more fully addressed below). Even Dao agrees with this in her Brief. *Appellant's Brief* at 23.

## III. The trial court properly held Dao jointly and severally liable.

Finally, Dao presents the issue of whether it is proper for a defendant to be held jointly and severally liable when she was assigned only 10% of the negligence. *Appellant's Brief* at 1. Dao relies on Section 33.013(b) of the Texas Civil Practice and Remedies Code for the proposition that under the plain language of the statute Dao cannot be found jointly and severally liable because she was not assessed 50% or more liability. *Id.* However, the effect of Dao's argument is that even though Dao submitted a jury question to the trial court with her name listed with the other defendants, and the jury apportioned liability among all of the defendants, that the judgment had to then strictly adhere to those percentages. However, such a strict adherence, while appropriate in a traditional negligence

action, is not appropriate when the submitted theories involve negligent entrustment claims.

The Restatement provides that:

> A person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other, regardless of whether joint and several liability or several liability is the governing rule for independent tortfeasors who cause an indivisible injury.

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT LIABILITY § 13 (2000). The Restatement makes it clear that a party to whom liability is imputed and who is also independently liable "is responsible for the share of the verdict assigned to [the party whose liability is imputed] and is also responsible for the share of the verdict assigned to its own negligence." *Id.* § 7 cmt. j (2000).

The Supreme Court, courts and commentators have recognized the difficulty in reconciling the language of the Proportionate Responsibility Statute with vicarious and derivative liability actions. *See, e.g., F.F.P. Operating Partners, L.P v. Duenez*, 237 S.W.3d 680, 686-87 (Tex. 2007) (considering the apparent conflict between the proportionate responsibility statute and the vicarious liability imposed by the Dram Shop Act); *Bedford*, 166 S.W.3d at 466 (analyzing the impact of the proportionate responsibility statute on vicarious and derivative liability causes of action); *see generally* William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious*

33

*Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 BAYLOR L. REV. 617, 647–48 (2003) (proposing that the Legislature, in enacting the original and present versions of section 33.003, did not consider derivative or vicarious liability cases).

Courts have consistently found that in a negligent entrustment situation the driver's liability is imputed to the owner of the vehicle. *Duenez,* 237 S.W.3d at 686 (noting that negligent entrustment is form of vicarious liability); *Atl. Indus., Inc. v. Blair*, No. 08-12-00093-CV, 2014 WL 4250540, at *3 (Tex. App.—El Paso Aug. 28, 2014, pet. filed)(holding negligent entrustment serves as a manner of establishing vicarious liability); *Bedford*, 166 S.W.3d at 462 (holding that, "if the hiring or entrusting employer is negligent, his liability for the acts of the driver is established, but by submitting both the driver's and the hiring or entrusting employer's negligence to the jury, allowance is made for recovery by the hiring or entrusting employer from the driver, based on the percentages of responsibility assessed by the jury."); *Rosell*, 89 S.W.3d at 657 ("Once negligent …entrustment is established, the owner/employer is liable for the acts of the driver."); *Loom Craft Carpet Mills, Inc. v. Gorrell,* 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ)(indicating that negligent entrustment vests the owner with liability for the driver's wrong).

Dao provides an analysis of *North American Van Lines, Inc. v. Emmons*, but misconstrues the holding. 50 S.W.3d 103 (Tex. App.—Beaumont 2001, pet. denied). There, the Court considered whether any of the plaintiffs' theories of recovery could support the judgment that held the driver, the moving company who owned the van, and the interstate motor carriers jointly and severally liable for the entire judgment. *Id.* at 116-22. The Court analyzed each of the jury's findings on conspiracy, joint enterprise, the lease, alter ego, and single business enterprise, and, after setting aside the jury findings on conspiracy and joint enterprise, concluded there was no basis to support the trial court's judgment imposing joint and several liability. *Id.* at 122. In no way did the Court address whether an owner of a vehicle could be held jointly and severally liable for her and the driver's percentage of liability under a negligent entrustment theory. *Id.* In fact the Court's analysis of each theory of liability indicates that it considered each theory and jury finding to determine whether there was sufficient evidence and/or whether the theory itself subjected the parties to joint and several liability even in light of Section 33.013. *See id.*

Further, Dao's argument is somewhat perplexing because while Dao appears to argue she cannot be held jointly and severally liable for Park's share of the judgment, immediately before this argument she specifically states that she had derivative liability exposure. *Appellant's Brief* at 23 ("Since any negligence

35

assigned to Mr. Parks by the jury would be passed on to Ms. Dao, her inclusion in the apportionment question resulted in the jury assigning a percentage of individual negligence to a party with *only derivative liability exposure.*").

The trial court held Dao jointly and severally liable for 95% of the judgment (Parks' 85% and Dao's 10%). CR 347. Because she was derivatively liable for Parks' portion of the judgment, it follows that she is jointly and severally liable for the entire 95% (their combined portion of the judgment). Further, under Dao's theory, had Dao not been submitted in the apportionment of liability question and only Komali Restaurant and Parks had been submitted, then when the trial court went to enter the judgment if it strictly followed section 33.013 there would be no way to hold Dao responsible for Parks' negligence—even though Dao acknowledges she was derivatively liable.

The import of the trial court's judgment is that because Dao was submitted in the proportionate responsibility question, without objection and as agreed to by all parties, and she was derivatively liable for Parks' share and her own share assessed by the jury, she is jointly and severally liable for 95% of the judgment. Dao would like this Court to only assign her 10% liability when she herself admits she was derivatively liable for Parks' 85% portion because of her negligent entrustment of the vehicle. *Appellant's Brief* at 23. Again, there is nothing to establish the judgment as rendered was improper.

**CONCLUSION**

The jury rendered a proper verdict finding Dao negligently entrusted her vehicle to Parks. There is evidence in the record to support that finding. As such, there are absolutely no grounds to overturn the jury's verdict.

Additionally, Dao failed to properly preserved and raise charge error and actually invited the error she now complains of by submitting her own name in the apportionment of liability question. Also, Dao failed to meet her burden to show the trial court abused its discretion. The trial court had case law to support its submission and in no way was there anything that mandated that Dao left off of the jury question. But even beyond finding an abuse of discretion in the charge, which has not been established, this Court must also find the error probably caused the rendition of an improper judgment. Dao made no attempt to establish this, and it is clear that there was no improper judgment rendered here. The outcome would have been the same even if Dao had not been apportioned liability.

Finally, the trial court was well within its discretion to hold Dao jointly and severally liable. The jury's finding that Dao negligently entrusted her vehicle to Park made her liable for Park's negligence. That is what the judgment accomplishes by finding Dao jointly and severally liable.

**PRAYER**

For the foregoing reasons, Appellees Elissa Garcia**,** on behalf of the Estate

37

of Rojelio Salinas, Jr., and Rojelio Salinas, Sr. respectfully request that this Court affirm the judgment of the 14th Judicial District Court, Dallas County, Texas, the Honorable Eric V. Moye presiding. Appellees further pray for such relief to which they may be entitled at law and in equity, including their costs of this appeal.

Respectfully submitted,

By:   /s/ Lorien Whyte
      Lorien Whyte
      State Bar No. 24042440
      Brin & Brin, P.C.
      6223 IH 10 West
      San Antonio, Texas 78201
      Tel: (210) 341-9711
      Fax: (210) 341-1854
      lwhyte@brinandbrin.com

      Dan McDonald
      State Bar No. 13539300
      dan@mcdonaldlawfirm.com
      Preston J. Dugas III
      State Bar No. 24050189
      preston@mcdonaldlawfirm.com
      Connie Squiers
      State Bar No. 18978515
      csquiers@mcdonaldlawfirm.com
      McDonald Law Firm, P.C.
      One Museum Place
      3100 W. 7th Street, Suite 230
      Fort Worth, Texas 76107
      Tel: (817) 717-5081
      Fax: (817) 717-5082

**ATTORNEYS FOR APPELLEES ELISSA GARCIA, ON BEHALF OF THE ESTATE OF ROJELIO SALINAS, JR., AND ROJELIO SALINAS, SR.**

38

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, I certify that there are 8,407 words in this document, excepting those portions of the brief listed in Rule 9.4(i)(1), as calculated by the word count feature of Microsoft Word 2010, which was used to prepare this document.

<u>/s/ Lorien Whyte</u>


## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2015, in accordance with the Texas Rules of Civil Procedure and the Texas Rules of Appellate Procedure, a true and correct copy of the foregoing document has been forwarded to the following:

Stacy Thompson
Meloney Perry
Tiffany Au
Christopher T. Colby
Perry Law P.C.
10440 North Central Expressway
Suite 1120
Dallas, Texas 75231
*Counsel for Appellant*

Preston J. Dugas III
Dan McDonald
McDonald Law Firm, P.C.
One Museum Place
3100 W. 7th Street, Suite 230
Fort Worth, Texas 76107
*Counsel for Appellee*

Jerry L. Ewing, Jr.
Nathan R. Cash
Walters, Balido & Crain, LLP
Meadow Park Tower, 15th Floor
10440 N. Central Expressway
Dallas, Texas 75231
*Counsel for Komali Restaurant, L.L.C.*

Richard E. Harrison
Harrison & Hull, L.L.P.
112 W. Virginia St.
McKinney, Texas 75069
*Counsel for Tim Parks*

*/s/ Lorien Whyte*
Lorien Whyte